**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Cheik Coulibaly,
    Petitioner,

vs.                            Case No. 1:05cv784
                                   (Dlott, J.; Black, M.J.)

Jim Erwin,
    Respondent.

**REPORT AND RECOMMENDATION**

Petitioner, an inmate in state custody at the Pickaway Correctional Institution in Orient, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. This matter is before the Court on the petition, respondent's return of writ, and petitioner's "traverse" in reply to the return of writ. (*See* Docs. 1, 3, 10).

**Procedural Background**

On June 19, 2000, the Hamilton County, Ohio grand jury issued a twenty-seven count indictment against petitioner and a co-defendant, charging petitioner in Counts One through Seventeen with one count of engaging in a pattern of corrupt activity in violation of Ohio Rev. Code § 2923.32 (Count One) and sixteen counts of complicity to commit theft and forgery offenses in violation of Ohio Rev. Code § 2923.03(A) (Counts Two through Seventeen). (Doc. 3, Ex. A).

Following a jury trial, four of the complicity charges (Counts Fourteen through Seventeen) were dismissed, the jury was unable to reach a verdict with respect to Counts One through Eleven, and petitioner was found guilty on the two remaining complicity charges in Counts Twelve and Thirteen. (*Id.,* Ex. B). On February 28, 2001, petitioner was sentenced to terms of imprisonment totaling two and one-half years for the two complicity offenses. (*Id.*).[1]

Thereafter, petitioner was retried on the eleven counts which had not been decided in the first trial. Prior to the second trial, on August 24, 2001, petitioner's counsel filed a motion for leave to file a motion to suppress "all evidence obtained from the unconstitutional search, seizure, and arrest of Defendant." (*Id.,* Ex. J). The motion was overruled on November 27, 2001. (*Id.,* Ex. K).

The matter proceeded to trial before a jury, which found petitioner guilty as charged in the eleven remaining counts. On December 7, 2001, petitioner was sentenced to consecutive terms of imprisonment totaling ten (10) years to be served concurrently with the sentence imposed in the first trial. (*Id.,* Ex. L).[2]

With the assistance of counsel, in a case designated Appeal No. C-010788, petitioner timely appealed this conviction and sentence to the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. M). Petitioner asserted two assignments of error in a brief filed August 9, 2002: (1) the jury's findings of guilt were against the manifest weight of the evidence; and (2) the trial court erred in failing to merge certain counts for sentencing purposes. (*Id.*).

Apparently, the attorney who filed the initial brief on appeal withdrew from the case, and new counsel was appointed to represent petitioner in the appeal.

---

[1] In a case designated as Appeal No. C-010212, Petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, which affirmed the February 28, 2001 judgment of conviction and sentence on July 17, 2002. (Doc. 3, Exs. C-D). On December 24, 2002, petitioner filed a motion for delayed appeal to the Supreme Court of Ohio, which was denied on January 29, 2003. (*Id.,* Exs. E-F). Finally, on January 14, 2003, petitioner filed a motion to reopen Appeal No. C-010212, which was denied by the Ohio Court of Appeals in an Entry filed April 13, 2003. (*Id.,* Exs. G, I).

[2] Specifically, petitioner was sentenced to a five (5) year prison term for the engaging in a pattern of corrupt activity offense and six (6) month prison terms for each complicity offense. (Doc. 3, Ex. L).

Petitioner's new counsel filed a motion to supplement the appeal brief to include as an additional assignment of error the claim that "the trial court erred by denying [petitioner's] motion for leave to file a motion to suppress evidence obtained through an illegal search, made without a search warrant, of [petitioner's] house." (*Id.,* Ex. O). This motion was overruled on October 25, 2002. (*Id.,* Ex. P).[3] On December 11, 2002, the Ohio Court of Appeals issued a Judgment Entry overruling the two assignments of error set forth in the initial appeal brief and affirming the December 7, 2001 judgment of conviction and sentence. (*Id.,* Ex. T).

Proceeding *pro se,* petitioner timely sought leave to appeal to the Supreme Court of Ohio, claiming in part that his new counsel on appeal should have been permitted to include the additional assignment of error in the appeal brief. (*Id.,* Ex. U). On May 7, 2003, the state supreme court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. W).

Apparently, on January 30, 2003, while his appeal was pending before the state supreme court, petitioner also filed a *pro se* application to reopen Appeal No. C-010788 with the Ohio Court of Appeals, First Appellate District; petitioner claimed that his first appellate counsel was ineffective in failing to assert the assignment of error challenging the denial of his motion for leave to file a suppression motion. (*Id.,* Brief, pp. 5-6; Ex. X). The Court of Appeals granted the reopening application and appointed counsel to represent petitioner in the matter. (*Id.,* Ex. Y). On November 19, 2003, the court issued a Judgment Entry in the reopened appeal overruling the additional assignment of error challenging the denial of the suppression motion. (*See id.,* Ex. BB).[4]

Petitioner did not file a timely appeal from the Court of Appeals' November 19, 2003 decision in the reopened appeal. Nearly eight months later, on July 6, 2004, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the Supreme Court of Ohio. (*Id.,* Ex. CC). The state supreme

---

[3] Petitioner apparently sought leave to appeal this decision to the Supreme Court of Ohio. (*See* Doc. 3, Ex. Q). On March 12, 2003, the state supreme court summarily denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. S).

[4] Specifically, the Court of Appeals held that although the trial court erred in denying the motion for leave to file a suppression motion, such error was harmless. (Doc. 3, Ex. BB).

3

court granted the delayed appeal on September 1, 2004. (*Id.,* Ex. DD).

With the assistance of counsel from the Ohio Public Defender's Office, petitioner filed a memorandum in support of jurisdiction challenging the Ohio Court of Appeals' decision on the suppression issue. (*Id.,* Ex. EE). On December 29, 2004, the Supreme Court of Ohio denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. GG).

Finally, on July 23, 2003, during the pendency of the reopened appeal, petitioner filed a *pro se* petition for post-conviction relief with the Hamilton County Common Pleas Court, wherein he alleged two claims of ineffectiveness by his trial counsel. (*Id.,* Ex. HH). On March 19, 2004, the Common Pleas Court denied the petition both on the merits of petitioner's claims *and*, "[m]ost importantly," on the ground that the petition was untimely-filed under Ohio Rev. Code § 2953.32(A)(2), which "requires that a petition for post-conviction relief must be filed no later than 180 days after the date on which a trial transcript is filed in the Court of Appeals." (*Id.,* Ex. II). Petitioner did not timely appeal this decision.

Over six months later, on September 24, 2004, petitioner filed a *pro se* notice of appeal, claiming in an attached affidavit of indigence that he was not informed of the trial court's March 19, 2004 decision until September 14, 2004 when he "received, through the Prison's Mailroom, the State's motion to dismiss complaint for Writ of Procedendo[, which had been filed by petitioner on September 2, 2004 in the post-conviction matter,] with an attached copy of the trial court's decision dated March 19, 2004." (*Id.,* Ex. JJ).

On October 22, 2004, the Ohio Court of Appeals *sua sponte* dismissed the appeal "for failure of the appellant to comply with the Ohio Rules of Appellate Procedure to wit: notice of appeal was not timely filed in accordance with Appellate Rule 4(A)." (*Id.,* Ex. KK). It appears from the record petitioner did not seek leave to appeal further to the Supreme Court of Ohio in the post-conviction matter. (*See id.,* Brief, p. 7 & Ex. LL).[5]

---

[5] In an attachment to the petition, petitioner indicates that an appeal was made to the state supreme court, which was dismissed on June 25, 2005 in Case No. 2005-0426. (*See* Doc. 1, Procedural History, ¶ 11). However, upon an internet search of that court's docket records, it

On December 1, 2005, petitioner's counsel filed the instant petition on petitioner's behalf. (Doc. 1). The petition alleges two grounds for relief:

> **Ground One**: Petitioner's protection against illegal search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution, was violated when he was convicted using evidence obtained in an illegal search.
>
> **Ground Two**: Petitioner was denied his right to the effective assistance of counsel due to appellate counsel's violation of his essential duty to assign as error the trial court's failure to grant him leave to suppress evidence.

(*Id*.).

In the return of writ, respondent contends that the petition is time-barred. (Doc. 3, Brief, p. 11-14). Respondent alternatively argues that petitioner's claims for relief "are not cognizable" in this federal habeas proceeding. (*Id.,* pp. 14-15).

## OPINION

### The Petition Should Be Dismissed With Prejudice Because It Is Time-Barred Under 28 U.S.C. § 2244(d)

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the

---

appears that Case No. 2005-0426 involved a discretionary appeal filed by petitioner on March 4, 2005 against an individual in a non-felony matter, and thus did not involve an appeal from the denial of post-conviction relief as suggested in the petition. Moreover, in replying to the return of writ, petitioner's counsel has not contested the position taken by respondent that no appeal was filed by petitioner to the Supreme Court of Ohio in the post-conviction matter. (*See* Doc. 10).

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, petitioner seeks habeas corpus relief based on alleged errors that occurred in his second trial on Counts One through Eleven of the indictment and during his direct appeal from his conviction in that second trial. It is clear from the record that petitioner was well aware of the facts underlying his two grounds for relief before the conclusion of the direct review proceedings. Therefore, his claims are governed by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which began to run when petitioner's conviction became "final" by the conclusion of direct review or the expiration of time for seeking such review.

In this case, it appears from the record that petitioner's conviction after retrial became "final" within the meaning of § 2244(d)(1)(A) on August 5, 2003, when the ninety (90) day period expired for filing a petition for writ of certiorari to the United States Supreme Court from the Supreme Court of Ohio's May 7, 2003 entry denying leave to appeal from the Ohio Court of Appeals' direct appeal decision (Doc. 3, Exs. T, W). *See Bronaugh v. Ohio,* 235 F.3d 280, 283 (6th Cir. 2000); *Smith v. Ohio Dep't of Rehab. & Corr.,* 331 F.Supp.2d 605, 613 (N.D. Ohio 2004) (citing *Bell v. Maryland,* 378 U.S. 226, 232 (1964)); *see also Clay v. United States,* 537 U.S. 522, 528 n.3 (2003) (in similarly resolving analogous issue under 28 U.S.C. § 2255's statute of limitations provision governing federal defendants, the Supreme Court noted that the "Courts of Appeals have uniformly interpreted 'direct review' in § 2244(d)(1)(A) to encompass review of a state conviction by [the United States Supreme] Court").[6]

---

[6] It is noted that the Court of Appeals reopened petitioner's appeal after granting petitioner's application for reopening filed on January 30, 2003. The reopened appeal may not be considered in determining when petitioner's conviction became "final" under 28 U.S.C. § 2244(d)(1)(A), because an application for reopening is deemed a collateral post-conviction

Therefore, the statute of limitations began to run on August 6, 2003, the day after petitioner's conviction became "final," *see* Fed. R. Civ. P. 6(a); *Bronaugh,* 235 F.3d at 285, absent the application of the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) or other equitable tolling principles.

During the one-year limitations period, petitioner was entitled to statutory tolling under § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2).[7] This tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998).[8]  Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.  *Rashid,* 991 F. Supp. at 259.[9]

Here, although petitioner's conviction became "final" in August 2003, the statute of limitations was tolled under § 2244(d)(2) during the pendency of the state proceedings on petitioner's previously-filed application to reopen his appeal. (*See* Doc. 3, Brief, pp. 5-6 & Ex. X).  Therefore, as respondent has argued (*id.*, Brief, p. 12), the statute actually commenced running on January 4, 2004, the day

---

remedy in Ohio rather than part of the direct appeal.  *See Lopez v. Wilson,* 426 F.3d 339, 351-53 (6th Cir. 2005) (en banc), *cert. denied,* 126 S.Ct. 1880 (2006); *see also Morgan v. Eads,* 818 N.E.2d 1157 (Ohio 2004).  However, the reopened appeal is subject to consideration for the purpose of determining statutory tolling under 28 U.S.C. § 2244(d)(2).

[7] *See also Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn*, 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998).

[8] S*ee also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000);  *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998)

[9] *Cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

after the forty-five (45) day period expired for filing a timely appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' final November 19, 2003 entry overruling the additional assignment of error alleged in petitioner's reopened appeal (*see id.,* Ex. BB). *See also* Rule II, § 2(A)(1)(a), of the Rules of Practice of the Supreme Court of Ohio.

An argument can be made that the statute of limitations did not commence running on January 4, 2004 because, while his reopened appeal was pending before the state courts, petitioner filed a petition for state post-conviction relief, which further extended the statute's tolling until that proceeding concluded. However, as respondent has pointed out in the return of writ (Doc. 3, Brief, p. 13), the post-conviction petition was denied because petitioner failed to comply with a filing requirement set forth in Ohio Rev. Code § 2953.21(A)(2). (*See id.,* Ex. II, p. 2).[10] Moreover, when petitioner belatedly attempted to appeal the trial court's decision, the Ohio Court of Appeals dismissed the appeal because petitioner failed to comply with the thirty-day requirement for perfecting a timely appeal set forth in Ohio R. App. P. 4(A). (*See id.,* Ex. KK).

In *Artuz v. Bennett,* 531 U.S. 4, 8 (2000), the United States Supreme Court held that a state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. Thereafter, the Sixth Circuit ruled that an Ohio prisoner's post-conviction petition dismissed by the state courts as untimely-filed is not "properly

---

[10] The trial court also rejected petitioner's claims for post-conviction relief on the merits. The court clearly expressed that its decision rested on both the fact that the "petition has no merit in the first instance" *and* the fact that "it did not comply with Ohio Revised Code § 2953.21(A)(2)." (Doc. 3, Ex. II) (emphasis added). Because the court thus unambiguously relied on the state procedural timeliness requirement as a separate, independent, and indeed "most important[]" basis for its rejection of the petition, the petition was not "properly filed" within the meaning of § 2244(d)(2). *See,e.g., Brooks v. Wall,* 279 F.3d 518, 522-23 (7th Cir.) (reaffirming *Fernandez v. Sternes,* 227 F.3d 977, 978 (7th Cir. 2000), and *Jefferson v. Welburn,* 222 F.3d 286 (7th Cir. 2000), as properly applying *Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989), to the extent that when the last state court to issue a reasoned decision in the matter relies on "dual grounds," or in other words "decides the merits *and* asserts a procedural bar," the "procedural bar means that the petition was not 'properly filed'" within the meaning of § 2244(d)(2)) (emphasis in original), *petition for rehearing denied,* 301 F.3d 839 (7th Cir. 2002), *cert. denied,* 538 U.S. 1001 (2003).

filed" and, therefore, cannot serve to toll the limitations period under § 2244(d)(2). *Vroman v. Brigano,* 346 F.3d 598, 603 (6th Cir. 2003); *see also Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001), *cert. denied,* 535 U.S. 1088 (2002). In so holding, the Sixth Circuit emphasized that deference must be accorded to the state courts as "the final authority on state law," and that "federal courts must accept a state court's interpretation of its statutes and its rules of practice." *Vroman,* 346 F.3d at 603; *Israfil,* 276 F.3d at 771.

In *Pace v. DiGuglielmo,* 544 U.S. 408 (2005), the Supreme Court confirmed that a state post-conviction petition rejected by the state courts on timeliness grounds is not "properly filed" and is therefore not subject to statutory tolling under § 2244(d)(2). In that case, the state post-conviction statute had recently been amended, and its application was unclear. *See Walker v. Norris,* 436 F.3d 1026, 1031 (8th Cir. 2006) (citing district court decision in *Pace* published at 151 F.Supp.2d 586, 588 (E.D. Pa. 2001)). The trial court ruled on the merits of the petition, and it was not until petitioner's appeal that the state appellate court interpreted the amended statute to require the dismissal of the petition as untimely-filed. *Id.* (citing *Pace,* 151 F.Supp.2d at 589-90).

In the federal habeas action which followed, the district court determined that the state petition was properly filed within the meaning of § 2244(d)(2) "because the petitioner complied with the filing requirements as they existed at the time." *Id.* (citing *Pace,* 151 F.Supp.2d at 590-91). On appeal, the Third Circuit reversed, and the Supreme Court affirmed, concluding that "time limits, no matter their form, are 'filing' conditions" which must be met for a state collateral review petition to be deemed "properly filed" under § 2244(d)(2). *Pace,* 544 U.S. at 417.

In so holding, the Supreme Court rejected the argument that "the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." *Id.* at 413. The Court reasoned:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de*

9

*facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.*

In addition, the Supreme Court was not persuaded by petitioner's argument challenging the fairness of the decision to the extent a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus time-barred in a subsequent federal habeas proceeding. *Id.* at 416. The Court stated that a prisoner seeking state post-conviction relief instead could "avoid this predicament" by "filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted," and that a petitioner's "reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id.*

Finally, the Supreme Court expressly held that as it had intimated in a prior case – *Carey v. Saffold,* 536 U.S. 214, 226 (2002): "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace,* 544 U.S. at 414.

Accordingly, in light of *Pace* and Sixth Circuit case-law interpreting the phrase "properly filed" as set forth in 28 U.S.C. § 2244(d)(2), the undersigned concludes that because the trial court denied petitioner's post-conviction petition on timeliness grounds and because the Ohio Court of Appeals dismissed petitioner's belated appeal from that ruling as untimely under Ohio R. App. P. 4(A), the statute of limitations was not tolled at all during the pendency of the state post-conviction proceedings.

The clock, therefore, began to tick on January 4, 2004 and ran for 183 days until it was tolled on July 6, 2004, when petitioner filed his *pro se* notice of appeal and motion for delayed appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' November 19, 2003 decision in the reopened appeal. (*See* Doc. 3, Ex. CC). The statute of limitations was tolled under § 2244(d)(2) from July 6, 2004 through December 29, 2004, when the Supreme Court of Ohio denied leave to

10

appeal and dismissed the appeal.[11] (*Id.,* Ex. EE).

The clock commenced running again on December 30, 2004 and expired 182 days later on June 30, 2005. Therefore, after taking into account statutory tolling under 28 U.S.C. § 2244(d)(2), the instant petition filed December 1, 2005 was submitted five months too late.

To the extent that petitioner contends he is entitled to review of his otherwise time-barred petition under equitable tolling principles, the Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to the AEDPA's statute of limitations," *Pace*, 544 U.S. at 418 n.8. However, the Sixth Circuit has held that the statute of limitations is not jurisdictional and that "equitable tolling does apply to the one-year limitation period applicable to habeas petitions." *Dunlap v. United States,* 250 F.3d 1001, 1003 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *see also McClendon v. Sherman,* 329 F.3d 490, 492 (6th Cir. 2003).

In *Pace,* the Supreme Court stated that a petitioner seeking equitable tolling generally bears the burden of establishing that (1) he has been pursuing his rights diligently; and (2) "some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)). Before *Pace,* the Sixth Circuit required the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

(1) the petitioner's lack of notice of the filing requirement; (2) the

---

[11] Recently, the Supreme Court held that the statute of limitations is not tolled under § 2244(d)(2) during the pendency of a petition for writ of certiorari to that Court from a state court's final post-conviction or collateral review decision. *See Lawrence v. Florida,* 127 S.Ct. 1079, 1083-84 (2007). In light of *Lawrence,* prior Sixth Circuit precedent on this issue no longer may be applied to include for tolling purposes the period of time in which a petitioner could have but did not seek certiorari review by the United States Supreme Court. *See Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *cert. denied,* 541 U.S. 1070 (2004). In any event, even assuming *Abela* were to apply to the Supreme Court of Ohio's decision in the reopened appeal, thereby statutorily tolling the limitations period an additional ninety days, the petition was filed two months too late and thus is still time-barred.

11

> petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988)).

Under this test, the absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.*

Here, petitioner has not demonstrated that some extraordinary circumstance prevented him from filing a timely federal habeas corpus petition with this Court. He also has not demonstrated he is entitled to equitable tolling under *Dunlap*.

Petitioner does not argue, nor is there evidence in the record to suggest, that he was ignorant, or lacked notice or constructive knowledge, of the one-year filing requirement for federal habeas petitions. In any event, it was unreasonable for petitioner to remain ignorant of this requirement, which has been in effect since April 1996.

The undersigned assumes, without deciding, that despite petitioner's failure to comply with the requirements for filing a timely petition for state post-conviction relief, as well as the gaps of time discussed above which occurred while petitioner sought relief from the state courts, *see supra* pp. 8-11, petitioner diligently pursued various state court remedies through December 2004. However, the same cannot be said of petitioner's pursuit of federal habeas relief. Petitioner waited eleven months to file his federal habeas petition after the last decision was rendered by the Supreme Court of Ohio on December 29, 2004 denying petitioner leave to appeal and dismissing the appeal from the Ohio Court of Appeals' decision in his reopened appeal. Therefore, equitable tolling under *Dunlap* is inappropriate in this case.

Accordingly, in sum, the undersigned concludes that under the applicable

one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), and the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2), the statute of limitations commenced running with respect to petitioner's December 7, 2001 conviction and sentence on January 4, 2004; ran for 183 days before it was tolled from July 6 through December 29, 2004 during the pendency of petitioner's delayed appeal from the Ohio Court of Appeals' November 19, 2003 decision in the reopened appeal; commenced running again on December 30, 2004; and expired 182 days later on June 30, 2005. Petitioner has not demonstrated the statute of limitations is subject to equitable tolling. Therefore, the instant federal habeas corpus petition filed on December 1, 2005, five months after the statute of limitations expired, is time-barred.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the two grounds for relief alleged in the petition, which this Court has concluded are barred from review on procedural statute of limitations grounds, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[12]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, DENY petitioner leave to appeal *in forma pauperis*

---

[12] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim. *See Slack,* 529 U.S. at 484. However, it is noted that review of petitioner's Fourth Amendment claim is precluded under *Stone v. Powell,* 428 U.S. 465, 494-95 (1976). Moreover, petitioner has not stated a viable ineffective assistance of appellate counsel claim, because his appeal was reopened and the Court of Appeals considered the assignment of error upon which his claim is based; therefore, no prejudice can be shown as required under *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).



Date: 6/28/07                                         **/s/Timothy S. Black**

    cbc                                         Timothy S. Black
                                                                     United States Magistrate Judge

K:\BRYANCC\2007 habeas orders\05-784denypet.sol.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Cheik Coulibaly,
    Petitioner

    vs                                                 Case No. 1:05cv784
                                                        (Dlott, J.; Black, M.J.)

Jim Erwin,
    Respondent

## NOTICE

    Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)   Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).